IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SILVER 2011 BUICK ENCLAVE WITH VIN 5GAKVBED8BJ101982 | Case No. 3:23 - mj - 514 |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Daniel R. Genck, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for a 2011 silver Buick Enclave bearing North Dakota license plate 257DTN and Vehicle Identification Number ("VIN") 5GAKVBED8BJ101982, registered to ANDREW AARON BULL and MIRANDA LYNN YOUNG; currently stored at the Lake Region Search and Rescue Building in Devils Lake, North Dakota ("**Subject Vehicle**"); for items noted in Attachment B.

2. The warrant would also authorize a search of the **Subject Vehicle** for photographs, video, biological matter and electronic crash data particularly described in Attachment B.

3. I am a Special Agent with the FBI and have been since March 2009. I am currently assigned to the Minneapolis Division, Grand Forks Resident Agency. I have conducted investigations related to national security matters, public corruption, violent crimes, drugs, and crimes against children. I have also served in leadership roles with the FBI in the Minneapolis and New Orleans Field Offices, as well as at FBI Headquarters in Washington, D.C. I have received specialized training in investigative strategies to include methods of interviewing, elements of effective interrogation, crime scene management and the effective processing of forensic evidence. I have also received formal legal training, with the specific study of the protections granted within the United States Constitution. My duties include the investigation of violent crimes occurring within Indian country, specifically on the Spirit Lake Reservation, including assault, manslaughter and murder, including violations of Title 18 United States Code

Sections 1112 (Involuntary Manslaughter), and 1153 (Offenses in Indian country) hereinafter referred to as the "**Subject Offenses**"

4. Title 18, United States Code, Section 1112 describes manslaughter as the unlawful killing of a human being without malice. Involuntary manslaughter is a killing in the commission of an unlawful act not amounting to a felony, or in the commission of an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

5. Title 18, United States Code, Section 1153 provides federal jurisdiction over an Indian who commits a number of offenses against another Indian or other person in Indian country. The enumerated offenses include manslaughter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1112 and 1153 (Involuntary Manslaughter in Indian country) have been committed by MIRANDA YOUNG ("MIRANDA"). There is also probable cause to search the information described in Attachment A for evidence, as described in Attachment B, for these crimes.

**PROBABLE CAUSE**

7. On or about September 22, 2023, at approximately 3:00 a.m., I received a phone call from Bureau of Indian Affairs ("BIA") Special Agent JERRY LENOIR ("LENOIR") who advised there was a deceased male named MYRON LAMBERT ("LAMBERT") located in the center lane of Highway 57 on the Spirit Lake Reservation. LENOIR advised LAMBERT was an enrolled member of the Spirit Lake Nation and appeared to be the victim of a hit and run vehicle accident. LENOIR advised there was no current suspect on the scene and he was unaware who may have struck LAMBERT.

8. When I arrived at the accident scene, LENOIR stated that MIRANDA YOUNG ("MIRANDA") had called 911 and reported she struck a person with her vehicle and then returned to her residence in Devils Lake, North Dakota. LENOIR advised LAMBERT was not enrolled but had requested enrollment from the Spirit Lake Nation previously and was denied. LENOIR also told me MIRANDA was currently being interviewed by Devils Lake Police Department officers at her residence

in Devils Lake. I spoke to Devils Lake Police Sergeant Holter ("HOLTER") who advised MIRANDA admitted to striking a person with her vehicle. HOLTER stated the vehicle had significant damage consistent with an accident and was being seized by the Devils Lake Police Department. HOLTER advised me an inventory search was conducted of the **Subject Vehicle** after it was taken into possession by the Devils Lake Police Department, to include photographs.

9. I then spoke to Benson County Sheriff's Department Chief Deputy Travis Carlson ("CARLSON") by telephone who advised me he was working on a state search warrant to obtain a blood and urine sample from MIRANDA. CARLSON also advised me he planned to arrest MIRANDA on a state charge of fleeing the scene of an accident. CARLSON told me he would have MIRANDA transported from her residence to CHI St. Alexius Hospital in Devils Lake, North Dakota, for the blood and urine sample by the Devils Lake Police Department.

10. CARLSON also told me he conducted a traffic stop on September 21, 2023, the evening before LAMBERT's body was located, in which MIRANDA was the driver of the **Subject Vehicle**. CARLSON advised MIRANDA was written a speeding citation for traveling approximately 81 miles per hour in a 40 miles per hour area near St. Michael, North Dakota, within the boundaries of the Spirit Lake Indian Reservation. CARLSON recalled MIRANDA was not intoxicated at the time but was driving three other individuals who appeared to be drinking alcohol. CARLSON told me the vehicle MIRANDA was driving was a silver Buick Enclave, consistent with what I later identified as the **Subject Vehicle**.

11. I processed the accident scene to include collecting evidence items and taking photographs. I also supported Trooper Andrew Birkholz ("ANDREW") from the North Dakota Highway Patrol who was conducting the accident reconstruction. ANDREW advised me he believed he could see where a vehicle skidded prior to striking LAMBERT. ANDREW believed the vehicle which struck LAMBERT was most likely driving close to the posted speed limit of 55 MPH. ANDREW also showed me where it appeared LAMBERT may have been walking on the road which appeared to be near the shoulder in the eastbound lane of traffic.

12. ANDREW, CARLSON, and I then went to CHI St. Alexius Hospital to collect a blood and urine sample from MIRANDA pursuant to a state search warrant obtained by CARLSON and conduct an interview of MIRANDA. At the hospital, I was met by FBI Special Agent Scott Kaul ("KAUL") who provided me a copy of MIRANDA's vehicle registration which identified MIRANDA and ANDREW BULL ("BULL") as the registered owners of the **Subject Vehicle.**

13. In the emergency room, I activated my handheld recorder and read MIRANDA an FBI FD-395 Advice of Rights form. MIRANDA waived her rights and agreed to speak with me. Also present during the interview were CARLSON, ANDREW, and KAUL. MIRANDA stated she was on the Spirit Lake Reservation on September 21, 2023, and into the early morning hours of September 22, 2023. MIRANDA advised she was not enrolled in the Spirit Lake Nation and resided in Devils Lake, North Dakota with BULL. MIRANDA stated she did not drink alcohol prior to the accident but had recently smoked methamphetamine.

14. MIRANDA recalled going onto the Spirit Lake Reservation to see CASSIE MCDONALD ("CASSIE") and bring CASSIE a pack of cigarettes. After CASSIE's house, MIRANDA picked up BEN RAINBOW ("RAINBOW") and two unidentified women who MIRANDA did not know. MIRANDA stated she picked RAINBOW and the women up on the side of the road in Fort Totten. MIRANDA stated she was not sure if RAINBOW and the women were using drugs or alcohol in her vehicle. While MIRANDA was driving RAINBOW and the women around the reservation, they were pulled over by CARLSON and MIRANDA was issued a speeding ticket. MIRANDA then left RAINBOW and the women at the Spirit Lake Casino.

15. MIRANDA drove around the reservation with her friend LIZ WALKER ("WALKER") and eventually left WALKER at WALKER's residence behind Four Winds School. MIRANDA showed writer a Facebook message from WALKER which MIRANDA received at 2:42 a.m. in which MIRANDA messaged WALKER stating she (MIRANDA) was about to leave Fort Totten and drive home to Devils Lake. MIRANDA advised she sent this message to WALKER from her (MIRANDA's)

4

vehicle prior to striking LAMBERT on Highway 57. MIRANDA stated she sent the Facebook message to WALKER while she (MIRANDA) was driving.

16. I was able to identify MIRANDA's Facebook username as MIRANDA.L.YOUNG.3. On September 23, 2023, I submitted a preservation request to Meta Platforms for the username MIRANDA.L.YOUNG.3 and received a confirmation e-mail of the preservation the same day.

17. MIRANDA stated she was driving by herself back to Devils Lake on Highway 57 when she struck an unknown person, who was later identified in this investigation as LAMBERT. MIRANDA stated LAMBERT was in the middle of the eastbound lane of travel. MIRANDA noted it was raining and the road was wet. MIRANDA attempted to stop her vehicle, but the car skidded and LAMBERT struck the front passenger side of MIRANDA's vehicle. MIRANDA stated she stopped in the road after hitting LAMBERT but did not exit her vehicle or check on LAMBERT. MIRANDA then drove home and told BULL about striking LAMBERT and BULL advised MIRANDA to call 911, which MIRANDA did. MIRANDA believed she was going 55 miles per hour at the time of the accident. MIRANDA's airbags did not deploy, and she was not wearing a seatbelt.

18. A blood and urine sample were collected from MIRANDA at the hospital. MIRANDA advised she would test positive for methamphetamine because she had smoked it recently. MIRANDA stated she did not smoke methamphetamine the day of the accident.

19. Following the interview, I spoke to ANDREW who advised MIRANDA's statements regarding her speed and the accident generally matched with his initial assessment of the accident scene. ANDREW also advised that a 2011 Buick Enclave, the **Subject Vehicle**, would have vehicle and crash data stored in the vehicle's computer system.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes the manner in which the vehicles were used.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

23. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

24. Based on the above information, your Affiant requests a search warrant to be issued authorizing the searches of the **Subject Vehicle** – a 2011 silver Buick Enclave, bearing North Dakota License Plate 257DTN and VIN 5GAKVBED8BJ101982, registered to ANDREW BULL and MIRANDA YOUNG, which is currently stored at the Lake Region Search and Rescue Building in Devils Lake, North Dakota, for evidence as described in Attachment B of the commission of involuntary manslaughter in violation of 18 U.S.C. §§ 1112 and 1153.

Respectfully submitted,

Daniel R. Genck
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on 2nd day of October, 2023.

_____
ALICE R. SENECHAL
UNITED STATES MAGISTRATE JUDGE